ALBANY,
August, 1805.

Jackson
v.
Horton.

## James Jackson ex dem' Jacob Frost, *against* Daniel Horton.

EJECTMENT for lands in the county of *West-Chester.* The declaration served, was captioned of *August* term, 1803, and the consent rule entered of the *November* term following. At the trial, the defendant insisted, that the plaintiff was barred from maintaining his action, by virtue of the provisions of the law of the 28th of *March*, 1797, 1 *Rev. Laws*, 162, limiting to five years, the period for bringing claims and prosecutions against forfeited estates. To do away the force of this objection, the plaintiff proved a suit by the present lessor, instituted on the 10th of *June*, 1801, against *Abijah Whitney*, then tenant in posssssion ; which action was afterwards defended by *Henry Strong*, as landlord, who died pending the same, and before there was an opportunity of bringing it to trial. That immediately afterwards, another suit was commenced against *Whitney*, who still continued in possession, but before the cause could be heard, he also died, and, that, as soon as his death was known, the present ejectment was brought.

*If an action be instituted under the statute of the 28th of March, 1797, within the five years thereby limited, and it abate by the death of the defendant, who dies after the five years have expired, whether another action, though instituted directly after, can be maintained qu.*

The case now came before the court on this single point ; whether the above circumstances were sufficient to prevent the operation of the act ?

*Woods* for the defendant. The intention of the legislature was to quiet all claims on forfeited property. The only exceptions allowed by the statute, are infancy, coverture, and insanity. Death of a defendant is not mentioned, and

C c

therefore cannot be urged. I know not of any decision exactly in point, but the principle of *Lloyd* v. *Vaughan*, 2 *Stra.* 1257, seems analogous to the present case. There, on error to reverse a recovery, because the tenant in tail, who was vouched as a *feme sole*, was under coverture, the defendant pleaded in bar the 10 *W. 3. c. 14.* limiting to twenty years, the period for bringing writs of error to reverse common recoveries. The plaintiff replied that his title did not accrue till the death of tenant in tail, yet, because more than 20 years had elapsed from the suffering the recovery, and the act was for quieting estates, without any saving as to the time when the title accrued, the court, on demurrer, gave judgment for the defendant. So, in 1 *Lev.* 31,* that the courts were not open during a rebellion, was held no bar to the statute of limitations, because not within any of the savings. The institution of a former action in time, will not make the present action in season. *Wilcocks* v. *Huggins*, 2 *Stra.* 907. To avail of former proceedings in saving a limitation, they must be continued.

*Prideaux* v. *Webber*.

*Riggs* contra. Courts, in construing statutes of limitation, have never confined themselves to the very letter, but have, in many cases, adopted an equitable interpretation, according to the spirit of the clause, by which a year is given after reversal on error, or arrest of judgment, to commence a new suit, though the period limited has elapsed. Thus, with respect to executors, if in *assumpsit*, they sue out process within a year after the six years have expired, the action is held to have been brought in time. This principle is acknowledged in the very authority of *Wilcocks* v. *Huggins*, cited from *Strange*. In *Story* v. *Atkins*, 2 *Stra.* 719, levying a plaint in an inferior court, was held a good replication to a plea of the statute of limitations, in a superior. So here, as the first action was brought in time, the present ought to be held a continuance of the first suit. To do it by *journeys accompts* was forbidden by the nature of the action; as it is commenced without process. A new suit was therefore the only mode, and in ejectment, which is an action peculiarly under the equitable control of the court, the equity adopted in construing other cases under the statute of limitations, ought to govern. It is inferable from the words in the act, which di-

rect only the suit to be prosecuted within the five years, but do not say *with effect.* The plaintiff did prosecute his claim within the period, and surely it is not to be prejudiced by the death of the defendants, which was the act of God. Rather than suffer a clear title to be thus defeated, the court would give leave, to enter in the original suit, judgment against the casual ejector, *nunc pro tunc.*

*Woodworth,* Attorney General, in reply. The court are bound by the express terms of the statute. The equitable interpretation insisted on, arises out of the words of the " act for the limitation of criminal proceedings and of ac- " tions at law."* There are no such expressions in that relied on by the defendant. The reason which induced the legislature to pass the act, prohibits the construction urged on the court. It was to quiet and extinguish claims on forfeited estates ; it is against the policy of the law, which was not enacted till 13 years after the state confiscated the property of its enemies, to protract the time before it can take effect. Three cases only were excepted from its operation; the court cannot make a fourth. The intent of the law was, in all cases not saved, to inhibit the bringing an action after five years, and as the interests of the people are implicated, a longer time cannot be allowed.

SPENCER, J. Upon the state of facts in this case, two questions arise. 1st. What is the effect of the statute of the 28th of *March,* 1797, on suits instituted after the expiration of five years from its enactment ? 2d. Will the peculiar circumstances of this case exempt it from the operation of that act?

The first section of the statute † enacts, that no persons who have, or thereafter shall have, any estate to any lands, supposed to be forfeited to the people of the state, by the attainder or conviction of any person, for any act or crime done during the late war, and which had been theretofore granted or conveyed by the commissioners of forfeitures, shall, after the expiration of five years from the passing the act, have, prosecute, sue or maintain, any action or suit at law for the recovery thereof, against the right or title so granted or conveyed by the people of this state.

The second section of the statute enacts, that if any persons shall, and do, at any time after the period of five

ALBANY, August, 1805.

Jackson v. Horton.

* 1 *Rev. Laws.* 562.

† Act limiting. the period of bringing claims and prosecutions against forfeited estates.

years, sue or prosecute any suit or action at law, or make any title, or claim, in, or to any of the lands granted as afore-said, that then such person, so suing or prosecuting such action, shall thenceforth be utterly barred for ever of all and every such suit, or action.

The third section protects the rights of infants, *feme coverts*, and insane persons, allowing them the period of five years after their disabilities are removed, to bring, sue, and prosecute their suits or actions.

There is a material difference in the phraseology of this act, and the common statute of limitations. The latter requires the suits to be commenced within the periods de-signated; the present not only requires the suits to be brought within five years from the passing the act, but de-clares, that no person, after that period, shall have, prose-cute, sue, or maintain any action or suit at law, for the re-covery of lands sold by the commissioners of forfeitures.

The reasons for an act savoring of such rigor, are ex-plained in the preamble to it. The title deeds and docu-ments relative to forfeited estates, had been carried away by the former proprietors, whose conduct caused their forfeiture, and the title of the state resulting therefrom, became pecu-liarly liable to be obscured or defeated. From the expres-sions used in the first and second sections of this statute, it appears to me, that the sense of the legislature is plainly manifested to be, that, except as to titles accruing after the passing the act, and the cases of infants, *feme coverts*, and insane persons, they meant to inhibit the maintaining any suit, without reference to the period of its commencement, after the expiration of five years from the passing the act. I do not feel myself at liberty to nullify an act of the le-gislature, in the face of expressions so conclusive.

If, however, the law should be construed to relate only to the commencement, and not the maintenance of suits, the objection is conclusive, that these actions were brought too late.

Courts have allowed a year to commence a new action in case of executors, if the limitation had not attached on the death of the testator; but this was done as being with-in the equity of the proviso in the statute, giving the plain-tiff a year to commence a new action, where the judgment

is arrested or reversed. The present statute has no such proviso as is contained in the statute of *James*, or our statute of limitations ; there is, therefore, no ground on which to raise an equitable construction, so as to embrace the case of the lessor of the plaintiff. It has been justly remarked by his counsel, that his case is a hard one, as he had commenced two ejectments within the period required, both of which were defeated by the deaths of the defendants. Suggestions of this kind cannot alter the language of the law. In the cases of *Prideaux* v. *Webber*, 1 *Lev.* 31, and *Lloyd* v. *Vaughan*, 2d *Stra.* 1257, the statute of limitations was pleaded, to which it was replied, that certain rebels had usurped the government, and none of the *King's* courts were opened, yet the whole bench gave judgment in favor of the defendant, that the statute of limitations was a good bar, " although the courts were not " open, because there is not any exception in the act of " such a case, and infants had been bound thereby, if they " had not been excepted."

It is only necessary to add, that in my opinion, without we repeal the statute, the plaintiff cannot recover.

LIVINGSTON J. As the first action, which was commenced in time, was not prosecuted to effect, by reason of the defendant's death, but was renewed a second and third time, on the same account, I inclined to think, on the trial, that the plaintiff was not barred. It has been my wish ever since, to adhere to this opinion, but with every leaning towards the plaintiff, who has a good title to the premises, I am compelled to abandon it. His situation is a very hard one, but the hardship is not of our creating. The legislature has thought proper to force those, who claim title to forfeited estates, to bring their actions within a certain period, and although it may not have been intended to take advantage of the act of God, its language is sufficiently strong to preclude our interference, whatever injustice may be produced. After prescribing a term, it is declared, that, " if any person shall *thereafter* sue, he " shall be utterly and forever barred from a recovery ;" if, then, this suit were not commenced within the period defined, what power or right have we to relieve the party,

ALBANY,    or take his case out of the plain letter of the law? Courts,
August, 1805.  it is true, have considered cases, which would have been
   Jackson   barred by the letter, as within the equity of certain provi-
      v.     sions of the statute of limitations; thus, if a first judg-
   Horton.   ment be arrested or reversed, a year is allowed to bring a
—————————    new action, and so *toties quoties;* and the equity of this
2 *Str* 907.   proviso has been extended to an executor, who sued out
             process within a year after his testator's death, if six years
             had not elapsed when he died; but here is no proviso,
             within the equity of which this case can be brought. In-
             fancy, coverture, and insanity, are alone saved. No other
             impediment or contingency is provided for. Neither of
             these disabilities, nor any resembling either of them, exist-
             ed here; so that we cannot, without legislating, help the
             plaintiff. It is certainly much better to permit a statute,
             now and then, to work individual hardship, however great,
             than by too liberal an application of what may be supposed
             rules of equity, to render its provisions uncertain or nuga-
             tory. By too great indulgence of construction, the statute
             of limitations, passed for the most salutary purposes, is
             become in a great measure, inoperative, if not a dead let-
*Cowp.* 548.   ter. A person can hardly open his mouth, even to deny
             an old debt, without exposing himself to an action for it;
             although the remedy had been barred for many years. If
             its object were to prevent controversies about stale de-
             mands, courts have been ingenious to defeat it, by per-
             mitting the loosest expressions to ensnare the unwary, and
             prevent its attaching, notwithstanding the most positive
             declaration, that an action *shall* be commenced within a
             certain time, subsequent to its accruing, *and not after.* Al-
             though I shall always feel bound by these decisions, in
             cases where they apply, I am not desirous of extending
             them, and therefore do not think myself at liberty, to de-
             part from the very imperative tone of the law, now under
             consideration. Without repealing it, or making a new law,
             this suit cannot be maintained. *Ita lex scripta est,* will
             be a sufficient answer to any complaint of hardship or in-
             convenience.

                 " When the words of an act are doubtful and uncer-
             " tain," says the great and learned lord chief justice *Willes,*

"it is proper to inquire what was the intent of the legis-
"lature, but it is very dangerous for judges, to launch too
"far in searching into the intent of the legislature, when
"they have expressed themselves in clear words." In
the present case, the terms are too explicit to leave room
for interpretation, or the smallest obscurity on the mean-
ing of the legislature. My opinion, therefore, is, that judg-
ment of nonsuit be entered.

THOMPSON, J. The only question submitted to the con-
sideration of this court is, whether the plaintiff be not
barred from maintaining his action, by reason of the act of
the 28th of *March*, 1797 ?

This statute requires suits, in cases like the present, to
be brought within five years from the passing of the law.
A suit, for the recovery of the premises in question, was
commenced within the time limited, and abated by the
death of the then defendant. Another action was forth-
with commenced, but not until after the time limited,
which also abated by the death of the then defendant.
The present suit was thereupon immediately brought.
These facts, thus concisely stated, are those which will, I
think, take the case out of the letter of the statute. No
laches is attributable to the Plaintiff. He commenced his
first suit in-due season, and the whole delay has been oc-
casioned by the death of the parties. I think the case
comes strictly within the maxim, that the act of God shall
prejudice no man. 1 *Rep.* 97. *b.** It would be highly un-    * *Shelly's* Case.
reasonable, that those things which are inevitable by the act
of God, which no human vigilance or industry can avoid,
or prevent, should be construed to the prejudice of any
person in whom there was no laches.

Thus in the case of the statute of limitations, pleaded
to actions by executors on simple contract debts, it has
been decided, that if the six years be not elapsed at the
time of the testator's death, it will save the bar, by reason
of the limitation, if the executor take out proper process
within a year, although the six years be elapsed before
process sued out.

This, however, is said to be within the equity of the sta-
tute, which gives a year to commence a new action, in

case the first judgment has been arrested or reversed. *Bull. N. P.* 150. I am not able to discover the application of the reason to the rule. The object of the statute was to make provision where delay had been occasioned by the acts of the law, and is confined to the two cases where judgment had been reversed or arrested. The proviso has no reference whatever to cases where the delay has been occasioned by death. The reason assigned, will, at all events, shew that courts will go great lengths to prevent the application of the statute of limitations. But the exceptions out of it have been carried still further. It has been ruled, that where an executor brings *assumpsit*, but dies before judgment, and the six years run, his executor may, notwithstanding, bring a fresh action, if he bring it in a reasonable time, which is to be left to the discretion of the court, upon the circumstances of the case.

This principle is strongly fortified by the case of *Wilcocks* v. *Huggins*,* where the court would not sustain the action against the plea of the statute of limitations, by reason of the delay, there having been a lapse of *four* years between the death of the first executor, and the commencement of the then suit. But they say, if the second executor had been retarded by suits about the will or administration, and he had shewn *that* in pleading, it would have been otherwise; because, then, the neglect would have been accounted for.

* *Fitz.* 81. 170. 289. 2 *Stra.* 907. *Esp. Di.* 150.

If circumstances like these, would prevent the statute of limitations from running against a claim, *a fortiori* ought the death of a party? It is said, however, the statute is positive, and contains no provisions for cases like the present. It is true, there is no express provision, but I consider the case as coming within the spirit of the act. The object of the legislature was to expedite the prosecution of claims, against lands that had been considered as forfeited, and although the present action cannot, technically speaking, be called the same as the one first commenced, yet it is the same claim, followed up with all the dispatch in the power of the lessor of the plaintiff. The legislature could not have contemplated the application of the statute to a case like the one before us. Delay occa-

sioned by the act of God, forms an exception *ex necessitate rei*, without any express provision. I am therefore of opinion that the plaintiff is entitled to judgment.

KENT, C. J. The statute of limitations which is set up by the defendant, was passed the 28th of *March*, 1797, and declares, that no person having any right to lands, supposed to have been forfeited, and heretofore conveyed by the commissioners of forfeitures, shall, after five years, have any suit for the recovery thereof, against the title conveyed by the people, with a saving nevertheless of the rights of infants, *feme coverts*, and persons insane.

The present case is not within any of the exceptions in the act, but is, at least, within the equity of those exceptions. The statutes of limitations were formerly construed with extraordinary rigor against the plaintiff, as in the cases of *Prideaux* v. *Webber*, 1 *Lev.* 31, and 1 *Keb.* 157, and of *Bremion* v. *Evelin*, 1 *Lev.* 111, in which the replications, stating that the *King's* courts were shut during the rebellion, were held to contain no excuse, because not a case within the exceptions of the statute. A different and more reasonable construction prevailed, however, in this court, in the case of *Sleght, administrator, &c.* v. *Kane*, decided in *April* term, 1799. That suit was on a promissory note dated in 1777. The defendant pleaded the statute of limitations. The plaintiff replied, that the defendant was within the *British* lines, in the southern district of this state, under the power and protection of the *British*, from 1777 to the 24th of *November*, 1783, when he departed this state, and that the suit was brought within six years after his return. The defendant rejoined, that he did not join the *British* till after the cause of action arose, and on demurrer, the court ruled, that being within the *British* lines, which were held by right of conquest, was being out of the state, as it respected the statute of limitations, and gave judgment accordingly for the plaintiff. This decision was a liberal construction, if not extension of the exception in the statute. But whenever the plaintiff has brought his suit in season, and *that* suit has failed, in consequence of the act of the defendant, or of the act of God, and a new suit has been commenced with due diligence, although after the limitation had expired, the

D d

defendant seems never to have been allowed to avail him-self of the statute in bar of the new suit. Thus, in the case of *Mathews* v. *Phillips*, 2 *Salk.* 425, the plaintiff brought his suit in an inferior court; while it was pending there, the six years expired, and the defendant removed the cause by *habeas corpus*, into the *King's Bench*, where the plaintiff was obliged to declare *de novo*, and the defendant pleaded the statute of limitations; the court held, that the plaintiff might reply the suit below, not for the reason that the suit above was a continuation of it, but because the plaintiff had rightfully and legally pursued his right, and it should not be in the power of the defendant to defeat him of a remedy without any default. It has also been repeatedly held, that where the creditor brought his action before the expiration of six years, and died pending the suit; but af-ter the six years had expired, the executor had one year at least, after the death of the testator, to renew the suit ; and if the new suit had been retarded, by contests about the will or administration, then a longer time would be al-lowed, as this would be accounting for the neglect. *Salk. ub. sup.* and 2 *Stra.* 907. The analogy is so complete be-tween the case of a suit, within the time of limitation be-ing defeated by the death of the plaintiff, and by the death of the defendant, as that the same rule ought to apply in both instances. The delay arises from the act of God ; it would therefore be unjust, and against the general maxim of law, to make that event work to defeat the party of his remedy. The judges, says *Plowden*, page 205, " have " ever been guided by the intent of the legislature, " which they have always taken according to the necessity " of the matter, according to that which is consonant to " reason and good discretion.' Following the rules of sound and established interpretation, it is difficult to sup-pose the legislature intended to save the party's right, in cases of marriage and infancy, and not also in such as the present, where the death of the possessor defeats it. We are rather to conclude, that they considered the present case as already provided for, by rules and decisions long established and universally approved. There is the greater reason, why the present case should be brought within the

ALBANY
August, 1805.

equity of the exceptions to the statute, because the act prescribed a new, special, and rigorous rule against particular claims. It is therefore, not founded on general and equal principles, and moreover, it took away from the party, a right with which he was antecedently vested, the right to bring his suit within 20 years. The conduct of the lessor of the plaintiff, in bringing his first suit within the new limitation of five years, and in reviving it with all possible diligence, as often as it was abated, by the death of the defendant, is analogous to that of the dissesee, who made continual claim, which was admitted, by the common law, to save the right of entry from being tolled by descent.

But if the statute is absolutely binding in every case not expressly mentioned, yet the plaintiff is entitled to relief in another way. When *Strong*, the landlord, was made defendant to the first suit, he was not joined with the tenant, who must have refused or neglected to appear, and by the statute, 1 *Rev. Laws*, 146, judgment ought to have been entered against the casual ejector, and when the landlord was admitted in his stead, the rule prescribed by the act is, that execution upon the judgment, against the casual ejector, stay until further order. Why this judgment was not entered, does not appear; but as it ought to have been done, and as the plaintiff is now to lose his right forever, by reason of that omission, I think we ought to do here, as is the common practice in a thousand other instances, grant a rule, that judgment be entered against the casual ejector, *nunc pro tunc*, and that the plaintiff be at liberty to proceed upon that judgment.

TOMPKINS, J. Gave no opinion, having been concerned.

*⁎* *The Bench, being thus divided, the parties, by advice of the court, agreed to turn the facts into a special verdict, and carry the case to the court of errors.*